**734**

**PALMER EXPLORATION, INC.,**
Plaintiff/counterdefendant,

v.

**George S. DENNIS,**
Defendant/counterclaimant,

**Chevron U.S.A. Inc.,**
Intervenor/Plaintiff/counterdefendant.

Civ. A. No. E88–0022(L).

United States District Court,
S.D. Mississippi, E.D.

April 18, 1989.

Jefferson C. Stewart and E.L. Brunini, Jr., Brunini, Grantham, Grower & Hewes, Jackson, Miss., for plaintiff/counterdefendant.

Craig Castle, Craig, Castle & Associates, Jackson, Miss., Peter K. Smith, Quitman, Miss., and Walker Watters, Jackson, Miss., for Chevron U.S.A. Inc.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This is a suit by Palmer Exploration, Inc. (Palmer) and Chevron U.S.A., Inc. (Chevron) to remove as clouds upon their title certain oil, gas and mineral leases held by George S. Dennis on certain property located in Wayne County, Mississippi. Dennis has asserted a counterclaim seeking to remove as clouds upon his title to those same leases a certain unrecorded assignment and farmout agreement executed by Chevron to and for the benefit of Palmer insofar as it covers the subject tract. A legal description of the tract and descriptions of each relevant lease and assignment are set out fully in the complaints and counterclaim and incorporated herein by reference.

The parties have stipulated to all material facts. In 1943 Robert and Genie Graham executed an oil, gas and mineral lease (the Graham lease) covering all of their mineral interests in approximately 700 acres located in Wayne County, Mississippi. This property included the subject tract. During the ten-year primary term of the lease, production of oil was obtained by Gulf Oil Company, assignee of the lease. The producing area was identified by the State Oil and Gas Board as the East Yellow Creek Field.

In 1955 Gulf released from the Graham lease that portion of the subject tract from the surface to a depth of 5700 feet or the top of the Tuscaloosa formation, whichever is a lesser depth. However, this partial release had no effect on Gulf's leasehold interests in the "deep rights" to the subject tract, i.e., the rights to oil, gas and miner-

als lying below 5700 feet or the top of the Tuscaloosa formation.

In the 1960's the operators in East Yellow Creek Field determined that the oil which could be recovered by primary recovery methods was nearing depletion.[1] After a feasibility study, they agreed to form a voluntary fieldwide unit in order to conduct water flood operations as a means of secondary recovery of oil from the pool.[2] Subsequently the operators prepared and circulated the East Yellow Creek Eutaw Unit One Unit Agreement for this purpose. Most of the property held under the Graham lease was included in the unit area; however, the subject tract was not. The proposed unit agreement was executed in 1970 by most of the working interest and royalty owners, including all the successors in interest to the Grahams (the heirs of Robert and Genie Graham, then deceased). It contained the following provision:

> Operations, including drilling operations, conducted with respect to the Unitized Zone on any part of the Unit Area, or production from any part of the Unitized Zone, shall be considered as operations upon or production from each Tract, and such operations or productions shall continue in effect, as to all lands burdened and affected therewith (whether all or only part of such lands be included in the Unit Area), each lease and term royalty interest, just as if such operations had been conducted and a well had been drilled on and was producing from such Tract; provided, that payment to Royalty Owners on the production of Unitized

Substances shall be determined as set forth elsewhere in this agreement.

The operators were advised by the State Oil and Gas Board staff that Mississippi law provided two methods of unitization: petitioning the Board to order compulsory unitization under section 6 of the 1964 Compulsory Fieldwide Unitization Act, Ch. 236, § 6, Miss.Laws 1964 (current amended version at Miss.Code Ann. § 53–3–111 (1972 & Supp.1988)), or petitioning for Board approval of a voluntary plan of unitization under section 10(e) of the 1948 Oil and Gas Conservation Act, Ch. 256, § 10(e), Miss.Laws 1948 (current version at Miss. Code Ann. § 53–3–7(8) (1972 & Supp.1988)). They were also told that the Board considered these statutes to be mutually exclusive and unaffected by each other. The operators chose the voluntary method, and Gulf petitioned the State Oil and Gas Board to approve the proposed unit as a "voluntary fieldwide unit" under section 10(e) of the 1948 Act. Subsequently, in orders 57– 72 and 58–72, dated March 15, 1972, the Board approved the plan embodied in the unitization agreement and companion operating agreement as a "voluntary fieldwide drilling and production unit."[3] The unit went into effect on April 1, 1972.

In December 1987, Palmer Exploration obtained a farmout[4] from Chevron (successor to Gulf) of the Graham lease on the subject tract as to a portion of the deep rights. Under the farmout, Palmer drilled a commercial well in the deep rights of the subject tract and earned an assignment of

---

**1.** Primary recovery methods are those which employ a single well bore, into which the oil enters naturally by the energy or gravity in the reservoir. Williams and Myers, *Manual of Oil and Gas Terms* 570 (1981).

**2.** Fieldwide unitization is the consolidation of many, if not all, of the leases in a field so that the field may be operated as a single entity without regard to boundary lines. Williams and Myers, *supra* note 1, at 800–01.

The term secondary recovery refers to methods which use energy sources extrinsic to the reservoir in order to extract the oil. In waterflooding, one method of secondary recovery, water is injected through an input well, forcing the oil out through surrounding wells. *Id.* at 681. Because the position of the input and

output wells is critical, unitization is usually necessary, from both an economic and engineering perspective, in order to conduct water flood operations. *Id.* at 800–01.

**3.** It is clear that the Board intended that this unit function as a voluntary, rather than a compulsory, unit. Order 58–72, amending the field rules, provided that tracts in which non-consenting owners had interests would remain individual units separate from the fieldwide unit.

**4.** A farmout is a leasehold obtained pursuant to a farmout agreement. The primary characteristic of a farmout agreement is that the assignee must drill one or more wells on the property as a prerequisite to the transfer to him of the lease. Williams and Myers, *supra* note 1, at 262 (1981).

the Graham lease, assuming it was then in effect, in that portion of the deep rights being produced by its Robert Graham No. 1 well.

However, while Palmer was drilling this well, Dennis approached the Graham heirs, told them he did not believe Palmer had a valid lease, and purchased from them oil, gas and mineral leases (the Dennis leases) covering property which includes the subject tract. There is no dispute that the Dennis leases cover the subject tract minerals from the surface down to 5700 feet. The question presented before this court is whether these leases also include the deep rights to the subject tract. Palmer and Chevron claim that the Graham lease was in full force and effect as to the deep rights of the subject tract at the time of the purported transfer to Dennis, and that therefore the Dennis leases do not cover these rights. Dennis, however, argues that unitization of the field divided the Graham lease by operation of law, and that accordingly it was no longer held in effect by the oil production within the unit.

The first issue to be resolved is the construction of two of Mississippi's oil and gas conservation statutes. In 1948 the Mississippi Legislature passed the 1948 Oil and Gas Conservation Act (1948 Act), Section 10(e) of which gave the Mississippi Oil and Gas Board the authority to approve voluntary fieldwide unit agreements:

Agreements made in the interest of conservation of oil or gas, or both, or for the prevention of waste, between and among owners or operators, or both, owning separate holdings in the same field or pool, or in any area that appears from geologic or other data to be underlain by a common accumulation of oil or gas, or both, and agreements between and among such owners or operators, or both, and royalty owners therein, for the purpose of bringing about the development and operation of the field, pool or area, or any part thereof, as a unit, and for establishing and carrying out a plan for the cooperative development and operation thereof, when such agreements are approved by the board, are hereby authorized and shall not be held or construed to violate any of the statutes of this state relating to trusts, monopolies, or contracts and combinations in restraint of trade.

Ch. 256, § 10(e), Miss.Laws of 1948 (current version at Miss.Code Ann. § 53–3–7(8) (1972 & Supp.1988)). The 1948 Act also gave the Board authority to establish compulsory drilling units. There was, however, no provision for the establishment of compulsory fieldwide units.

Recognizing that voluntary fieldwide agreements are often unworkable because of the large number of owners and the problems that result from a significant number of nonsigners, in 1964 the Mississippi Legislature passed the Compulsory Fieldwide Unitization Act (1964 Act). This Act provides a process by which operators desiring unitization of a field may petition the State Oil and Gas Board to force all the owners to unitize their interests. Section 6 of the 1964 Act addresses the problem of leases covering some land within the compulsory unit and some without, and provides that these excluded tracts will not be held by oil and gas production on the unitized tracts. At the time relevant to this suit, section 6 read as follows:

The portion of unit production allocated to a separately owned tract within the unit area shall be deemed, for all purposes, to have been actually produced from such tract, and operations with respect to any tract within the unit area shall be deemed for all purposes to be the conduct of operations for the production of oil or gas, or both, from each separately owned tract in the unit area. However, when an oil, gas and mineral lease contains lands partially within and partially without said unit area, the unit agreement shall have no force and effect on lands lying outside of such unit area and failure of the lessee or lessees thereof to drill and develop such lands lying outside said unit area within ninety days from the date of the determination of the unit area by the state oil and gas board shall render such lease or leases on lands outside said unit area void and of no force and effect.

Miss.Code Ann. § 6132–106 (1942) (current amended version at Miss.Code Ann. § 53–3–111 (1972 & Supp.1988)). This latter provision insures that lessees who do not begin production will not be allowed to hold the excluded tracts indefinitely with no benefit accruing to the lessor. The provision is unique to the 1964 Act; no such provision is found in the 1948 Act.

■ Dennis' claim to the rights of the subject tract is based on his argument that the effect of section 6 of the 1964 Act was to divide the Graham lease by operation of law at the time of unitization. He reasons that because Gulf did not begin production on this excluded tract within ninety days of the unitization order, the lease expired, and thus the Graham heirs held all rights to the tract and made an effective conveyance to Dennis in 1987. This assertion is based on his argument that section 6 of the 1964 Act superseded section 10 of the 1948 Act, and that therefore voluntary agreement pursuant to the 1948 Act is no longer a viable method of unitization. Alternatively, he claims that section 10 of the 1948 Act is merely a provision to exempt any such agreements from antitrust violations, that it was never intended to authorize fieldwide unitization, and that it is a "makeshift statute" which no longer provides an alternative to compulsory, Board-ordered unitization. He contends that the provision in the 1964 Act which would have the effect of dividing the lease may not be circumvented by classifying a unit as voluntary and attempting to proceed under section 10 of the 1948 Act. Palmer and Chevron, on the other hand, argue that section 6 of the 1964 Act does not apply to voluntary unitization agreements, that the lease was never divided, and that therefore Palmer owns the lease for the deep rights of the subject tract.

Dennis' construction of the statutes is simply not plausible. A plain reading indicates that the statutes provide two entirely distinct methods of achieving unitization: Voluntary agreements approved by the Board under section 10 of the 1948 Act, and compulsory unitization ordered by the Board pursuant to the 1964 Act. Only with the latter process is a lease divided. More-over, the State Oil and Gas Board has viewed and continues to view these as alternative procedures, as evidenced by the fact that since passage of the 1964 Act the Board has continued to approve voluntary agreements under section 10(e). The court accords great weight to the construction of the statute given it by the Board. *See Lambert v. Ogden,* 423 So.2d 1319 (Miss. 1982); *Barr v. Delta and Pine Land Co.,* 199 So.2d 269 (Miss.1967); *State Tax Comm'n v. Edmondson,* 196 So.2d 873 (Miss.1967). The court also notes that since the passage of the 1964 Act, the legislature has, in amending the statute twice, implicitly adopted the Board's construction of the statute. *See Barr,* 199 So.2d at 271.

Dennis also argues that legal precedent in Mississippi requires this court to find that the lease in this case was divided by unitization, citing *Texas Gulf Producing Co. v. Griffith,* 218 Miss. 109, 65 So.2d 447, *suggestion of error overruled,* 218 Miss. 109, 65 So.2d 834 (1953), a case in which the Mississippi Supreme Court held that leased lands excluded from a compulsory drilling unit would not be held by production within the unit. *Griffith* is not controlling. The most important distinction between *Griffith* and the case *sub judice* is that *Griffith* involved a *compulsory* drilling unit. In *Griffith* the lessors had refused to sign a voluntary agreement, and had thereafter been forced by order of the State Oil and Gas Board to participate in the unit. The court was reluctant to deprive them of their rights by allowing the lessee to hold the excluded acreage indefinitely, without production of oil or gas. This policy of protecting the rights of owners who are forced to unitize is inapplicable to the present case. The heirs of the Grahams voluntarily agreed to unitize, and one of the provisions of their agreement was that the leases on excluded tracts would remain in full force and effect as long as there was production within the unit.

■ In summary, section 6 of the 1964 Act did not have the effect of dividing the lease on the subject tract. Neither does judicial precedent indicate that the lease

was divided by unitization. In the absence of any controlling statute or principle of law, the court looks to the agreement, which indicates that Palmer and Chevron own the lease to the deep rights of the subject tract. Accordingly, it is ordered that the motions of Palmer and Chevron for summary judgment are granted and the motion of Dennis for summary judgment is denied. The relief requested in the complaints of Palmer and Chevron will be granted, and the counterclaim of Dennis will be dismissed.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED.